CHARLES H. VAN ETTEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8793. Promulgated October 8, 1927.

The business of the petitioner was to secure and finance contracts with cities for garbage disposal. Such contracts were assigned to and financed through corporations. As an incident to his business petitioner was required to help finance such corporations with his personal funds. *Held,* that losses were sustained in petitioner's business which may be included in computing a net loss under section 204 of the Revenue Act of 1921.

*Allan C. Muddiman*, *C. P. A.*, for the petitioner.
*L. L. Hight, Esq.*, for the respondent.

The petitioner appealed from the determination by the Commissioner of deficiencies in income tax for the taxable years 1920 and 1922 of $32.40 and $1,056.68, respectively. Petitioner alleged no errors with respect to the determination of the deficiency for 1920. He alleges that he sustained a net loss in the operation of his business for 1921 which is allowable as a deduction in 1922.

FINDINGS OF FACT.

Petitioner is a resident of New York State, with an office at No. 60 Wall Street, New York City. His business is engineering, promoting, designing, building and operating refuse disposal plants. He first began to deal with the matter of the disposal of garbage in 1902. Since 1907 he has been engaged solely in the business of planning, engineering, operating and financially promoting refuse disposal plants.

In 1907 and 1908 he studied the methods, design and construction of a plant for disposal of the refuse of the Borough of Brooklyn, N. Y., and became interested in the financing of a plant therefor, which venture took the form of a corporation called the Brooklyn Development Co.

In 1912, he developed the Boston Development & Sanitary Co. and successfully operated it for 10 years.

In 1914 he developed the New York Disposal Co., which organization handled ashes, rubbish, street sweepings and garbage from Brooklyn and garbage from the Boroughs of Manhattan and Bronx. The company was financially successful but its activities were eventually abated as a nuisance.

Shortly after this last-mentioned company ceased to do business, petitioner assembled plans and designs for the construction of a plant to dispose of the garbage of greater New York, to take the place of the New York Disposal Co. He associated with him one Gaffney, who had been engaged with him in the Boston plant, and one Gahagan, a contracting engineer. Gahagan had had no prior experience in refuse-disposal work. These three men formed a partnership and made a bid to the city for a contract. At this time there was no agreement as to the proportions of the interests of the partners in the partnership. The bid was awarded to the partnership. In order to secure the contract after the bid was awarded to them, the partnership deposited $50,000, being the cash deposit required, and deposited $200,000 in lieu of a surety bond. Petitioner put in $25,000. The balance of the $250,000 was put in by his two partners and a fourth man. A bond of a surety company for $200,000 was later substituted for the cash deposit of $200,000. One hundred thousand dollars of selected securities were deposited with the

surety company and the surety company took the partners' personal guarantee for the other $100,000. A corporation was organized, called the Metropolitan By-Products Co., to which company the contract with the city was assigned. One million dollars was borrowed by the corporation and secured by first mortgage bonds, upon an agreement that approximately $800,000 would be raised by the petitioner and his associates. This amount was obtained by petitioner and his associates from their own funds and subscriptions of their friends. Petitioner put in $25,000 in order to evidence his good faith and to encourage his friends to contribute. The subscribers to this fund of approximately $800,000 were secured by a second mortgage. The $25,000 which petitioner originally put into the project was returned to petitioner in the form of second mortgage bonds. Participating certificates were issued by the company to indemnify petitioner and his associates for their contributions to the securities which were deposited with the surety company. Capital stock of no par value was issued and distributed. Forty per cent went to the underwriters of the million dollar first mortgage bond issue, 10 per cent went to petitioner as a bonus for promotion, and 50 per cent of the stock was distributed among the holders of the second mortgage bonds. The Metropolitan By-Products Co., shortly after its organization, failed to make profits. It went into the hands of a receiver and in 1921 the plant was sold at a receiver's sale. The sale did not bring a price sufficient to reimburse the first mortgage bond holders and the second mortgage bonds and participating certificates, including those held by petitioner, became worthless.

The petitioner received no compensation from the city for his services, any profit being dependent upon the successful financing and operation of the contract with the city.

On January 1, 1921, petitioner continued to own certain of said securities of the Metropolitan By-Products Co. which had cost him $21,018.66 as follows:

| | |
|---|---:|
| Second mortgage bonds | $13,770.00 |
| Participating certificates | 7,224.66 |
| Deposit charge incurred in connection with the above | 24.00 |
| | 21,018.66 |

Such securities became worthless in 1921.

For 1921 the petitioner received a total gross income of $11,961.72, computed as follows:

| | |
|---|---:|
| Gross income from trade or business | $10,840.00 |
| Interest received on note of Brooklyn Ash Removal Co. | 281.72 |
| Interest received on bonds of Boston Development and Sanitary Co | 840.00 |
| Total | 11,961.72 |

The petitioner's business expenses for 1921 were as follows:

| | |
|---|---:|
| Salaries and wages | $1, 230. 80 |
| Office rent | 550. 00 |
| Brooklyn office expense | 212. 84 |
| Moving Brooklyn office | 12. 00 |
| Meadville, Pa., investigation | 250. 00 |
| Meadville, Pa., traveling expense | 100. 00 |
| London, England, office expense | 56. 16 |
| Living expense while in London, England, on business | 1, 404. 00 |
| Steamship fare, England to New York City | 193. 05 |
| Total | 4, 008. 85 |

During 1921 petitioner sold a Liberty bond for $904 which had been acquired by him in 1918 at a cost of $1,000.

### OPINION.

PHILLIPS: Petitioner claims that in 1921 he sustained a net loss from the operation of a trade or business regularly carried on by him, within the meaning of section 204 of the Revenue Act of 1921, which he is entitled to deduct. There is no question that the loss was sustained. The single question involved is whether the losses sustained by reason of the worthlessness of an investment in the corporation result " from the operation of any trade or business regularly carried on by the taxpayer."

It appears from the testimony that the petitioner was paid nothing by the city for his services and advice with respect to garbage disposal. Any gain was dependent upon securing a contract for its disposal and the financing of the project, compensation being received by way of a bonus or participating interest in the corporation which was organized to take over the contract. Any profit was, therefore, dependent on the successful financing and operation of the garbage-disposal contract. To accomplish this, petitioner was dependent upon funds which might be secured from investors and usually found it necessary to invest some of his own funds as an evidence of his faith in the undertaking. The financing of these contracts constituted an integral part of the operation of the business of the petitioner. The losses claimed were sustained in the operation of that business and, therefore, are an exception to the general principle that losses from investments in corporations may not be allowed in computing a net loss sustained by an individual.

Reviewed by the Board.

*Decision will be entered on 15 days' notice, under Rule 50.*